UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 09-844 JMR/FLN

Matthew P. Sheridan,

        Plaintiff,

v.                                               **REPORT AND RECOMMENDATION**

Warden R. Rios, Ms. J. Anderson, HSA,
Kirk Alford, R.N., Correctional Officer Burns,
Correctional Officer Smiley, Correctional Officer Dunn,
and other unknown FBOP employees,

        Defendants.
_____

FRANKLIN L. NOEL, United States Magistrate Judge

        This matter came before the undersigned United States Magistrate Judge on Defendants' motion for summary judgment (Doc. No. 26). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendants' motion for summary judgment be granted (Doc. No. 26).

**I.    BACKGROUND**

        Plaintiff is presently an inmate at the Federal Correctional Institute in Sandstone, Minnesota, "FCI-Sandstone." He commenced this action on April 13, 2009, by filing a complaint alleging violations of his federal constitutional rights. The alleged constitutional violations occurred while Plaintiff was incarcerated in FCI-Waseca, in Waseca, Minnesota. Plaintiff filed two amended complaints, the last of which was filed on August 24, 2009, and is the operative complaint in this matter. (Doc. No. 19). The

1

Court denied Plaintiff's motion to amend a third time, and denied Plaintiff's motion to stay all proceedings. (Doc. Nos. 22, 17).

The named defendants are Warden R. Rios, Ms. J. Anderson, HSA, Mr. Kirk Alford, R.N., Correctional Officer Burns, Correctional Officer Smiley, Correctional Officer Dunn, and other unknown BOP employees. Plaintiff alleges he attempted to exhaust his administrative remedies for this civil rights action while he was incarcerated in FCI-Waseca, FCI-Englewood, and FCI-Sandstone, but he could not do so because his inmate requests to staff were not answered, and staff refused to provide him BP-8 and BP-9 forms.

The substance of Plaintiff's civil rights claim stems from an incident where he fell out of a top bunk while in the Special Housing Unit (SHU) at FCI-Waseca, and he broke his arm on June 2, 2008.

Plaintiff claims Warden Rios permitted dangerous and defective bunk beds to be installed in the SHU. Plaintiff fell out of the top bunk and was in severe pain, but Warden Rios refused to send him to the hospital or provide adequate pain medication. Plaintiff further contends Warden Rios refused to provide adequate rehabilitative treatment. Plaintiff alleges Defendants J. Anderson and Kirk Alford were personally involved in the alleged wrongful acts of Warden Rios. Plaintiff alleges the Defendant Correctional Officers knew Plaintiff was suffering severe pain when he fell from the bunk on June 2, 2008, but they laughed at and harassed him instead of providing treatment. Plaintiff alleges other unknown BOP employees are liable for installing defective bunk beds, which they knew did not meet ACA/OSHA and BOP regulations concerning safety rails and safety gear. He also alleges the unknown BOP employees failed to issue a

2

policy statement that old, overweight, infirm inmates should never be housed on a top bunk in the SHU at FCI-Waseca. Plaintiff seeks damages of $2,000,000.00, and an order directing Defendants to provide adequate medical treatment and abide by their administrative remedy procedure.

Defendants filed a motion for summary judgment on February 8, 2010, (Doc. No. 26) based on Plaintiff's failure to exhaust his administrative remedies. After Plaintiff filed his original complaint in this action, the Court ordered Plaintiff to amend his complaint, noting the exhaustion of administrative remedies requirement. (See Order, Doc. No. 10). On July 17, 2009, Plaintiff moved to stay this proceeding so he could exhaust his administrative remedies, stating he was unaware of the exhaustion requirement. (See Motion to Stay Proceeding, Doc. No. 14). Relying on clear and unambiguous Eighth Circuit authority, the Court denied the request. (Doc. No. 17). In the meantime, Plaintiff submitted an inmate request to the Warden at FCI-Waseca, (Plaintiff was incarcerated at FCI-Sandstone at that time) asking the Warden why he had been deliberately indifferent in regard to Plaintiff's June 2, 2008 injury. (Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem."), Ex. 2, Doc. No. 29). Plaintiff also asked the Warden about the installation of the bunk beds and about the identity of others involved. Id.

Receiving no response from Warden Rios at FCI-Waseca, Plaintiff submitted a request for an administrative remedy to officials at FCI-Sandstone, where he was then housed. (See Doc. No. 29). This request was rejected as untimely, and Defendants assert Plaintiff did not pursue this determination further. In other words, he did not then offer an excuse why the request was untimely. (See Declaration of Heather Kensey,

3

Doc. No. 30).

Defendants note that Plaintiff was housed at FCI-Waseca on the date he was injured, June 2, 2008, and remained there until October 15, 2008. (See Declaration of Matt Levisay, Doc. No. 32). Defendants assert Plaintiff never attempted to use the administrative remedy process during that time.

Plaintiff's complaint also alleges he was not provided the forms necessary to exhaust his administrative remedies while he was incarcerated in FCI-Englewood. (See Amended Complaint, Doc. No. 19). Defendants state that Plaintiff moved to FCI-Englewood on October 16, 2008, which was the earliest date Plaintiff could have requested administrative remedy forms there. Defendants assert this was beyond the twenty-day deadline from the date of Plaintiff's injury in which Plaintiff had to begin the administrative remedy process. Defendants also submitted two declarations stating FCI-Englewood has no record that Plaintiff attempted to exhaust administrative remedies there. (See Declarations of Kyle Tycksen and Suzanne Leyba, Doc. Nos. 31 and 33).

Defendants note that Plaintiff also alleges he was denied adequate rehabilitation at FCI-Waseca, and Plaintiff's last physical therapy session at FCI-Waseca was on August 25, 2008. (See Defs.' Mem., Exs. 1, Doc. No. 28). Defendants assert Plaintiff's deadline to begin the administrative remedy process regarding this grievance had also expired by the time Plaintiff was incarcerated at FCI-Englewood on October 16, 2008. Defendants again pointed out that Plaintiff, in his motion to stay, stated he was unaware of the exhaustion of administrative remedies requirement and conceded that he had not exhausted his administrative remedies when he filed this lawsuit. (See Motion to Stay

4

Proceeding, Doc. No. 14).

With respect to Defendants' contention that the lawsuit must be dismissed for Plaintiff's failure to exhaust his administrative remedies, Plaintiff makes several arguments (Doc. No. 37).

1. Plaintiff asserts that the five declarations offered by Defendants in support of their motion for summary judgment should be ignored because they are not in compliance with 28 U.S.C. § 1746 (1) or (2), which describes the form of unsworn declarations under penalty of perjury.

2. Plaintiff asserts he was never issued an A&O (admissions and orientation) handbook, which describes the administrative remedy process, at any of the institutions at issue. Plaintiff further asserts he was in no way advised of his responsibility to begin the administrative remedy process within twenty days of his injury on June 2, 2008. Plaintiff, apparently now having obtained an A&O handbook from FCI-Sandstone, states that it does not inform inmates of the need to start the administrative remedy process within twenty days of the incident causing the grievance.

3. Plaintiff asserts he diligently pursued information regarding his June 2, 2008 injury by means of Freedom of Information and Privacy Act requests beginning October 28, 2008, "when it became clear the Bureau would not comply with the A/R process." (Pl.'s Mem., ¶ 13, Exs. D17-18, D1-18).

4. Plaintiff asserts he spoke to BOP attorney Dennis Bitz, who informed Plaintiff he was not aware of any BOP policy requiring BOP employees to respond to Inmate Requests to Staff, the primary avenue for seeking informal remedy in the first step of the grievance procedure. Thus, Plaintiff concludes, even if he had begun the administrative

5

remedy process on the date of his fall, no one was obligated to respond.

     5. Plaintiff states, "[I]t can be argued that [Plaintiff] engaged in seeking an informal remedy the date of the incident, June 2, 2008, by requesting to visit a hospital and doctor, see Exhibit C1-2, and continued to engage in the informal remedy process at Waseca during physical therapy sessions, see defendants response pages 5-6." (Pl.'s Mem., ¶ 16). Plaintiff further asserts the administrative remedy procedure does not require an inmate to proceed to the second step of the procedure within twenty days of the attempt at informal resolution. Plaintiff states that the government admits he "asked to move to the next step in the prison grievance system on or about October 16, 2008, see response page 5." (Pl.'s Mem., ¶ 19). Plaintiff asserts he then proceeded to steps two through five of the remedy process in July 2009, but all of his requests were rejected as untimely. (Pl.'s Mem., ¶ 21, Exs. 26-33). Thus, Plaintiff concludes the date he needed to file a BP-9 form was September 9, 2009, the date he was refused a remedy at the BP-8 stage. (Pl.'s Mem. ¶ 24, Ex. E31).

     In reply (Doc. 38), Defendants assert Plaintiff's Exhibits E and F do not support Plaintiff's contention that he exhausted his civil rights claim regarding his fall from the top bunk on June 2, 2008. Instead, these documents show that Plaintiff pursued a federal tort claim, and requested information from the BOP to support his tort claim, which was denied by the BOP on February 19, 2009.

     The BOP further argues that contrary to Plaintiff's assertion, there is a twenty-day deadline for "completion of informal resolution" and submission of a formal administrative remedy request (BP-9 form). (Reply at 8 (quoting 20 C.F.R. § 542.14)). Defendants also contend that bringing an FTCA claim does not exhaust a Bivens claim.

6

Finally, Defendants assert Plaintiff has offered no evidence, or even a sworn declaration, of his claim that he never received a handbook at FCI-Waseca describing the prison remedy procedures.

## II. CONCLUSIONS OF LAW

### A. Standard of Review for Summary Judgment.

Summary Judgment is appropriate, pursuant to Federal Rule of Civil Procedure 56(c), when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." One looks to the substantive law to determine which facts are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If there is evidence upon which a reasonable jury could return a verdict for the nonmoving party, summary judgment will not be granted. Id. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Corp. Radio, 475 U.S. 574, 587-88 (1986). When the moving party brings forth a proper summary judgment motion, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 256. "Rule 56(e)

permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c)." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

**B.     Plaintiff failed to exhaust his administrative remedies.**

42 U.S.C. § 1997e(a), enacted as part of the Prisoner Litigation Reform Act of 1996 ("PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Furthermore, "proper" exhaustion is required under the PLRA. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Dismissal is mandatory if exhaustion of administrative remedies did not occur prior to filing of the lawsuit. Jones v. Bock, 549 U.S. 199, 211 (2007) (stating unexhausted claims cannot be brought in court); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). The purpose of the exhaustion requirement is to allow agencies to correct their own mistakes without being haled into federal court, and to promote efficiency. Woodford, 548 U.S. at 89.

There are two circumstances under which the Eighth Circuit has excused inmates from complying with an institution's grievance procedure: 1) when prison officials have prevented inmates from utilizing the procedures; and 2) when officials

themselves have failed to comply with the grievance procedures.  Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005).  In opposing a motion for summary judgment on the issue of exhaustion of administrative remedies, a plaintiff must present evidence beyond mere conclusory statements to demonstrate a prison official precluded him from fully exhausting his administrative remedies.  Gisege v. Minnesota Dept. of Corrections, Civil No. 06-1353 (JRT/RLE), 2007 WL 2892024, at *11 (D.Minn. Sept. 28, 2007).

The BOP provides an administrative remedy program to allow inmates to seek formal review of an issue relating to any aspect of his or her confinement.  28 C.F.R. § 542.10.  The first step in the administrative remedy process is for an inmate to present his or her concern informally to a staff member.  28 C.F.R. § 542.13.  If the inmate's concern is not resolved informally within twenty calendar days following the date on which the basis for the Request occurred, the inmate must, within the same twenty calendar days, file a formal written request for administrative remedy on a BP-9 form. 28 C.F.R. § 542.14(a).  When the inmate demonstrates a valid reason for delay, the filing deadline may be extended.  28 C.F.R. § 542.14(b).  The Coordinator at any level of the remedy program may reject a request or appeal if it does not meet any requirement of the program.  28 C.F.R. § 542.17.

If the inmate is not satisfied with the Warden's response to the BP-9, the inmate may appeal to the Regional Director on a BP-10 form, within twenty days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  If the inmate is also dissatisfied with the Regional Director's response, the inmate may file an appeal with the Office of General Counsel on a BP-11 form, within thirty days of the Regional Director's response.  Id.  The Office of General Counsel must respond within forty calendar days,

unless written notice of a twenty-day extension is provided to the inmate. 28 C.F.R. § 542.18. If an inmate does not receive a response within the time allotted for reply, the inmate may consider the lack of response to be a denial at that level. Id. After the Office of General Counsel responds or fails to respond within the allotted time, including extension, the inmate has exhausted his administrative remedies.

After reviewing all of the evidence and exhibits offered by the parties, the Court finds that Plaintiff did not exhaust his administrative remedies regarding his civil rights claims of deliberate indifference by installing defective bunk beds, and deliberate indifference by providing inadequate medical treatment and rehabilitative services when Plaintiff fell out of the top bunk and injured his arm at FCI-Waseca on June 2, 2008. Under the BOP regulations, Plaintiff had twenty days from June 2, 2008 to attempt to informally resolve his grievance against Defendants regarding his injury, and Plaintiff had twenty days from August 25, 2008 to attempt to informally resolve his grievance regarding inadequate rehabilitative services. Plaintiff's only assertion that he began the administrative remedy process within the twenty-day period was to suggest that his requests to go to the hospital and for treatment could be considered attempts to informally resolve his grievances. Even if asking for medical attention was a proper informal remedy request, which is doubtful, Plaintiff never timely filed a formal remedy request during the twenty-day period when informal resolution proved impossible. Therefore, he did not exhaust his administrative remedies. Furthermore, Defendants are correct that Plaintiff did not exhaust his administrative remedies for this civil rights action by exhausting his remedies for a claim under the Federal Tort Claims Act or by seeking discovery under the Freedom of Information Act and Privacy Act. See Jones,

549 U.S. at 218 (stating proper exhaustion requires exhaustion of "the prison grievance process itself.")

Plaintiff filed an untimely inmate request to staff at FCI-Waseca on July 21, 2009, asking the Warden why he was deliberately indifferent to his health and safety and medical needs after he was injured on June 2, 2008, and questioning the Warden regarding others involved and the installation of the bunk beds. (Pl.'s Mem., Doc. No. 37-5, Exs. 32-33). The Warden did not respond, and Plaintiff's formal remedy request (BP-9) and subsequent appeals (BP-10 and BP-11) were rejected as untimely. (Pl.'s Mem., Doc. No. 37-5, Exs. 26-31). Unless the inmate "properly" exhausts his administrative remedies, including compliance with the deadlines of the prison's administrative remedy program, the exhaustion requirement is not met. Woodford, 548 U.S. at 90-91.

Plaintiff contends he was unable to timely exhaust his administrative remedies because neither FCI-Waseca, FCI-Englewood, nor FCI-Sandstone advised him of his responsibility to exhaust his claims or of the administrative remedy procedures. Specifically, Plaintiff contends he was never given an A&O handbook explaining the exhaustion requirement and procedures upon admission to each of these prisons, and was never otherwise informed of such. This case is before the Court on a summary judgment motion. Therefore, Plaintiff cannot rest upon his assertion that FCI-Waseca and the other institutions never advised him of the administrative remedy procedure without providing the Court evidence of such, at a minimum, his own affidavit. Plaintiff has not done so.

Additionally, the Court notes that Defendant provided five declarations from BOP

staff at FCI-Waseca, FCI-Englewood, and FCI-Sandstone, which together assert that Plaintiff did not exhaust his administrative remedies, and the declarants did not prevent him from exhausting his administrative remedies at any of the three prisons. (See Doc. Nos. 28-32). These declarations, as Plaintiff points out, do not contain the explicit statutory language for unsworn declarations under penalty of perjury contained in 28 U.S.C. § 1746. However, they substantially comply with the statute because the declarants' statements are explicitly made "pursuant to 28 U.S.C. § 1746," which indicates they are made under penalty of perjury, as required by the statute. Therefore, for all of the reasons above, Defendants are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies before commencing this action.

When a prisoner has not exhausted his administrative remedies, the case must be dismissed without prejudice to allow Plaintiff to do so. See Calico Trailer Mfg. Co. Inc. v. Ins. Co. of N.Am., 155 F.3d 976, 978 (8th Cir. 1998). The Court notes that the regulations concerning the prison grievance procedures allow an inmate to extend the filing deadline if good reason for the delay is given. If Plaintiff seeks to exhaust his administrative remedies after dismissal of this lawsuit, he can present his claim that FCI-Waseca never gave him an A&O handbook or advised him of the administrative remedy procedures to explain why he is late in seeking to invoke the administrative remedy process. Several courts have found prison officials to have rendered the administrative remedy procedure "unavailable" where they failed to notify an inmate of the procedures. Whether this will be found to be a good reason for Plaintiff's untimeliness under 28 C.F.R. § 542.17, will depend upon Plaintiff's credibility and

whatever other evidence he may present to support his contention that he was never given notice of how to invoke the process. See Russell v. Unknown Cook County, Sheriff's Officers et al, No. 03 C 3786, 2004 WL 2997503, at *4 (N.D. Ill. Dec. 27, 2004) (finding notice of administrative remedies to be fully consonant with goals of the PLRA); Arnold v. Goetz, 245 F.Supp.2d 527, 538 (S.D.N.Y. 2003) (stating prison officials' are entitled to the benefit of § 1997e(a) "as long as the institution has made a reasonable, good faith effort to make the grievance procedure available to inmates. . .")

### III. RECOMMENDATION

Based upon all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (Doc. No. 26) be **granted**;

2. The case be dismissed without prejudice;

3. Judgment be entered accordingly.


DATED: August 18, 2010

                                         *s/ Franklin L. Noel*
                                         FRANKLIN L. NOEL
                                         United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties on or before September 1, 2010, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This

Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.